UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

ALEX ESTUARDO HERNANDEZ PEREZ,                                    Petitioner,

v.                                                          Civil Action No. 4:26-cv-93-RGJ

ARTHUR MAGLINGER, et al.,

                                                                Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Alex Estuardo Hernandez Perez's Writ of
Habeas Corpus. [DE 1]. Respondents responded on February 23, 2026. [DE 7]. Petitioner replied
on February 24, 2026. [DE 8]. The Parties agreed that an evidentiary hearing is unnecessary. [DE
5; DE 6]. This matter is ripe for adjudication. For the reasons below, the Court **GRANTS** Perez's
Petition for a Writ of Habeas Corpus [DE 1].

**I.      Background**

Petitioner Alex Estuardo Hernandez Perez ("Perez") is a native and citizen of Guatemala.
[DE 1 at 1]. Perez has been present in the United States since 2011. [*Id.*]. Perez entered the United
States without inspection. [DE 1 at 2; DE 7 at 72].[1] Since his arrival, Perez has been living in Indiana
with his partner. [DE 1 at 2]. Perez has a six-year-old U.S. citizen daughter who lives with his prior
partner in New York. [*Id.*].

Perez has been in detention since February 8, 2026. [*Id.*]. Perez was driving to work when
local law enforcement pulled him over for a traffic violation. [*Id.*]. However, after local police
arrived, he was turned over to Immigration and Customs Enforcement ("ICE") personnel and
detained. [DE 7-2 at 91]. Perez has one previous encounter with immigration officials. In 2024, he

---

[1] Both parties agree that Perez entered "without inspection." [DE 1 at 2; DE 7 at 72]. This is also consistent
with the fact that he was not designated as an arriving alien on the I-862. [DE 7-1 at 87].

encountered immigration officials following drug and alcohol charges. [DE 7 at 72]. Perez was issued a Notice to Appear, but was released on bond the same day. [*Id.*]. Perez then sought asylum, but his claim was denied. [*Id.*]. He was then ordered removed by an Immigration Judge ("IJ"). [*Id.*]. However, he has appealed this order, and that appeal is still pending before the Board of Immigration Appeals. [*Id.*]. Therefore, he has no final order of removal.

On the same day as his detainment, February 8, 2026, Perez was issued a Warrant for Arrest pursuant to an I-200. [DE 7-3 at 90]. As mentioned, in 2024, Perez had previously been issued a Notice to Appear Form I-862. [DE 7-1 at 87]. The Notice to Appear identified Perez as an "alien present in the United States" not as an "arriving alien." [*Id.*]. Perez is currently in removal proceedings pursuant to 8 U.S.C. § 1229a. [DE 1 at 2-3].

ICE contends that based on interim guidance from DHS, issued July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission," only those noncitizens who have already been admitted into the United States are eligible to be released during removal proceedings and all other noncitizens are subject to mandatory detention, under 8 U.S.C. § 1225 ("Section 1225"), not Section 1226. [DE 1 at 8-9]. This is a reversal of longstanding policy. [*Id.*].

Perez asserts that the United States illegally detained him under Section 1225 instead of Section 1226 in violation of the INA. [*Id.* at 15]. And that this prolonged detention is in violation of his Due Process Rights under the Fifth Amendment. [*Id.* at 15-17]. Therefore, Perez seeks release from his detention, or in the alternative, to hold a bond hearing before a neutral IJ to determine whether he should remain in custody. [*Id.*]. Perez also claims that he is part of the National Class which was certified in *Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) ("*Bautista I*"). [*Id.* at 12].

In response, the United States makes two arguments. First, that *Bautista* does not bind or preclude the purview of the Court. [DE 7 at 75]. Second, the United States "rel[ies] and

incorporate[s] by reference the legal arguments from the briefs the government filed with the Sixth Circuit Court of Appeals in the four §§ 1225-1226 appeals." [*Id.* at 73]. Those cases are *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025); *Alvarez v. Noem,* Case No. 25-1969 (6th Cir. Oct. 27, 2025); *Contreras-Cervantes v. Raycraft*, Case No. 25-1978 (6th Cir. Oct. 28, 2025); *Pizarro Reyes v. Raycraft*, Case No. 25-1982 (6th Cir. Oct. 29, 2025). The United States concedes that the "relevant facts in all four matters on appeal" are "similar to the relevant facts in this matter" and the only "relevant legal question" is whether the "Petitioner is detained under 8 U.S.C. § 1225 or § 1226." [DE 7 at 73].

## II.    DISCUSSION[2]

### A.  Potential impact of *Bautista v. Santacruz*

The Central District of California granted Class Certification to a group of Petitioners in *Bautista v. Santacruz*, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) ("*Bautista I*"). In *Bautista I*, the court certified "The Bond Eligible Class" defined as "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id*. at *9. Perez fits within this criterion. Courts have started to interpret and apply the Class Certification in different ways. *See Aranda v. Olson*, 2025 WL 3499061, at *8 n. 2 (W.D. Ky. Dec. 5, 2025) (stating that "it is unnecessary to address the impact of the [Class Certification] in ruling on the pending Petition); but see *Rodriguez v. Larose*,

---

[2] Neither side has asserted any jurisdictional arguments, but many decisions in similar cases by district courts within the Sixth Circuit discuss this principal. The Court has analyzed jurisdiction of remedies in similar circumstances, such as *Edahi v. Lewis*, 2025 WL 3466682, at *2-3 (W.D. Ky. Nov. 27, 2025) and incorporates its reasoning into this opinion. Neither party asserted any exhaustion-related arguments and no applicable statute or rule mandates exhaustion. However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Edahi,* 2025 WL 3466682, at *3, and the Court waives the exhaustion requirement for the same reasons.

2025 WL 3456475, at *5 n. 4 (S.D. Cal. Dec. 2, 2025 (holding that "[f]or the reasons discussed in this Order" in granting the writ of habeas corpus, "Petitioner is a member of this class and entitled to the same relief."); *Ramirez v. Smith*, No. 5:25-cv-186-BJB, 2026 WL 228778 (W.D. Ky. Jan. 28, 2026) (preliminarily holding the judgement of *Bautista I*, made final in *Bautista II*, precludes the United States from "relitigating the issues decided," i.e. whether Section 1225 or Section 1226 applies to certain individuals and those who fit within the definition of the Bond Eligible Class).

Originally, when the Central District of California granted Class Certification it refrained from entering a final judgment. *See Bautista I*, 2025 WL 3288403, at *9. Instead, the court set a status conference and ordered the parties to file a joint report on how to "proceed with [the] matter." *Id.* Because it was not a final judgment, courts have found that the Class Certification does not "dictate [] [current] proceedings." *Serrano v. McDonald*, 2025 WL 3296037, at *1 (D. Mass. Nov. 26, 2025). But on a motion for reconsideration, the Central District of California changed course. The court found "it appropriate to enter final judgment as to the claims encompassed within the MSJ Order." *Bautista II*, 2025 WL 3713982, at *6 (emphasis added). The court stated that entering a final judgement was appropriate because it would help aid in the "expeditious" manner of the case, and due to "new facts" that "indicate Respondents . . . noncompliance with the Court's orders." *Id.*

But regardless of *Bautista II*, the Court can "rest[] its decision" on the independent merits of Perez's petition. *Santuario v. Bondi*, 2025 WL 3469577, at *2 n.4 (D. Minn. Dec. 2, 2025).

### B. Section 1225 vs. Section 1226

The United States argues Section 1225 applies to Perez's detention, not Section 1226.

1.    <u>The Statutory Language.</u>

The first statute, 8 U.S.C. § 1225 titled "Inspection by immigration officers;[3] expedited

removal of inadmissible arriving aliens; referral for hearing" states, in pertinent part,

**(b) Inspection of applicants for admission**
　　**(2) Inspection of other aliens**

　　　　**(A) In general**
　　　　Subject to subparagraphs (B) and (C), in the case of an alien who is
　　　　an applicant for admission, if the examining immigration officer
　　　　determines that an alien seeking admission is not clearly and beyond
　　　　a doubt entitled to be admitted, the alien shall be detained for a
　　　　proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A). For purposes of this provision, "an alien who is an applicant for

admission" is defined as an "alien present in the United States who has not been admitted or who

arrives in the United States." 8 U.S.C. § 1225(a)(1).

The second provision, 8 U.S.C. § 1226, titled "Apprehension and detention of aliens"

states:

**(a) Arrest, detention, and release**
On a warrant issued by the Attorney General, an alien may be arrested and detained
pending a decision on whether the alien is to be removed from the United States.
Except as provided in subsection (c) and pending such decision, the Attorney
General—
　　(1) May continue to detain the arrested alien; and
　　(2) May release the alien on—
　　　　(A) Bond of at least $1,500 with security approved by, and
　　　　containing conditions prescribed by, the Attorney General ...

8 U.S.C. § 1226(a).

---

[3] Immigration Officers are defined as "any employee or class of employees of the Service or of the United
States designated by the Attorney General, individually or by regulation, to perform the functions of an
immigration officer specified by this chapter or any section of this title." 8 U.S.C. § 1101(a)(18).
"Inspection" is not defined by statute but U.S. Customs and Border Patrol states, "[t]he inspection process
includes all work performed in connection with the entry of aliens and United States citizens into the United
States, including pre-inspection performed by the Immigration Inspectors outside the United States." U.S.
CUSTOMS & BORDER PATROL, *Immigration Inspection Program*, (Mar. 6, 2024)
https://www.cbp.gov/border-security/ports-entry/overview.

Under Section 1225(a)(1) "applicants for admission," are noncitizens "present in the United States who [have] not been admitted." Section 1225(a)(1). Under subsection (b), certain "applicants for admission" may be subject to removal proceedings. *Dep't of Homeland Sec. v. Thuraissigam*, 591 U.S. 103, 108-09 (2020). "Admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Section 1225, with limited exception, has a mandatory detention provision. Section 1225(b)(2)("if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a . . .") (emphasis added). Noncitizens detained under Section 1225(b)(2) may be released only if they are paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

Section 1226 authorizes "the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. Section 1226(a) creates a discretionary framework for noncitizens arrested and detained upon an arrest "warrant issued by the Attorney General." Section 1226(a). The Attorney General "may continue to detain the arrested alien," "may release the alien" on bond of at least $1,500 or "may release the alien" on parole. *Id.* The arresting immigration officer makes an initial custody determination. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). However, noncitizens can appeal that determination in a bond hearing before an IJ. *Id.*

Congress recently amended Section 1226(c). Through the Laken Riley Act, Congress added two new mandatory provisions to the general discretionary framework of Section 1226. Now, as codified in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid

documentation, or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii).

To summarize, if detained under Section 1225(b)(2)(A), the noncitizen must remain in custody for the duration of their removal proceedings, but if detained under Section 1226, the noncitizen is entitled to a bond hearing before an IJ. *Rodriguez v. Bostock*, 779 F. Supp.3d 1239, 1247 (W.D. Wash. 2025). Section 1225 essentially "supplement[s]" Section 1226. *Rodriguez Disa v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

### 2.    Statutory Application to Perez

As an initial matter, the detention papers and arrest warrant both state that Perez was detained and arrested pursuant to Section 1226 as they were provided via Form I-200. [7-3 at 94]. As stated above, Arrest Warrants, Form I-200s, are only found within Section 1226 and its implementing regulations, 8 C.F.R. § 236. This statutory authority requires a bond hearing.

Regardless, the United States contends that Perez is not only an applicant for admission but is also "seeking admission" pursuant to Section 1225(b)(2)(A) and therefore is subject to the mandatory detention provision of Section 1225(b)(2)(A). [DE 7-4 at 110-11].  The question before the Court is whether "an alien present in the United States who has not been admitted" includes someone like Perez, who is not presently seeking admission but has been in the United States for approximately fifteen years without inspection. These facts are similar to *Lopez-Campos*, where the petitioner "is a native and citizen of Mexico who entered the United States. . . prior to 2000, without inspection or admission." [DE 7-4 at 124].  In other words, the Court must decide whether Perez, who may be an "applicant for admission" and who was detained pursuant to a Form I-200 arrest warrant, is also "seeking admission" pursuant to Section 1225(b)(2)(A). The United States

contends he is. [DE 7 at 71-72]. If so, he would be placed in mandatory detention under Section 1225(b)(2)(A) and his habeas petition would be denied. [*Id.*] If not, then he has been "arrested and detained pending a decision on whether [he] is to be removed from the United States" pursuant to Section 1226(a). Petitioner contends that Section 1226 should control. [DE 1 at 14-15]. He further contends that because Section 1226 controls, his Fifth Amendment due process rights have been violated and he should be entitled to the full due process under the law. [*Id.* at 15-17]; *Maldanado v. Baker,* 2025 WL 2968042, at *9-10 (D. Md. Oct. 21, 2025).

When interpreting statues, "the inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (internal quotes omitted). However, ambiguity is not determined by examining provisions in isolation. *Rodriguez v. Noem*, No. 1:25-CV-1196, 2025 WL 3022212, at *5 (W.D. Mich. Oct. 29, 2025). "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024).

"It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walke*, 533 U.S. 167, 174 (2001)). "[E]very clause and word . . . should have meaning." *United States, ex rel. Polansky v. Exec. Health Res., Inc.,* 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). This includes titles and section headings. *See Dubin v. United States*, 599 U.S. 110, 120-21 (2023). "[A] title is especially valuable [where] it reinforces what the text's nouns and

verbs independently suggest." *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring)).

### i. The Title and Statutory Scheme.

Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The added word of "arriving" supports the notion that the statute governs "arriving" noncitizens, not those present already. This is further reinforced by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2)(B)(i)-(iii) ("who is a crewman. . . who is a stowaway."). This limited, and more specific methods of entry suggest that Section of 1225(b)(2) is limited to noncitizens arriving at a border or port, being inspected by an immigration officer, *and are presently* "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing to *Dubin*, 599 U.S. at 118 (2023)). As a result, Section 1225(b)(2) is more limited in scope than the United States asserts. *Id.*

Further, Section 1225's implementing regulation is found in 8 C.F.R. § 235, which is titled "Inspection of Persons Applying for Admission." The plain language of the regulation's title demands action by the alien, that they must be "applying for admission," similar to the statue's language that the individual be "seeking admission." It requires an action on the part of the alien. Additionally, the language in the first part of the regulation, 8 C.F.R. § 235.1, states that "[a]pplication to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection . . ." This language also supports Section 1225 being about the inspection process *on arrival at a port of entry* for individuals presenting themselves for examination before an immigration officer.

The statute's title is also divided into sections which are separated by semicolons. The first phrase is "inspection by immigration officer." Perez entered the United States "without

inspection," [DE 1 at 2], and as a result, this portion of the title is inapplicable to Perez's situation. Next, the part of the heading specifying "expedited removal" specifically includes the words "arriving aliens." This portion of the title is also inapplicable to Perez as he is already in the country, and has been for approximately fifteen years, and thus, is not arriving.[4] As such, the sections of this statute relevant to "expedited removal" are inapplicable to Perez.

Instead, Perez was previously issued the Form I-862, which is the administrative document used to provide the written notice required by 8 U.S.C. § 1229(a). [DE 7-1 at 87]. Under 8 U.S.C. § 1229(a), the government must provide a "notice to appear" to start removal proceedings under section 1229a (also known as INA § 240 proceedings). Form I-862 is the physical form that fulfills this requirement. While DHS issues the form, legal proceedings under 1229 only officially commence when the I-862 is filed with the Immigration Court ("EOIR"). Simply receiving the form does not mean a court case has started until that filing occurs. Here, Perez's Form I-862 was filed and the proceedings commenced. [DE 1 at 2-3 (discussing Perez's status of removal proceedings)]. Also, his Form I-862 has not been revoked or terminated by an order of the IJ, which would be necessary before issuance of a Form I-860 placing him in expedited removal proceedings. For all these reasons, the text of the title indicates that § 1225 governs "arriving" noncitizens, while § 1226 focuses on the apprehension and detention of those noncitizens already in the country.

The statutory scheme provides context, too. In *Jennings*, the Supreme Court stated that Section 1226 is the "default rule" and "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 288; 301-03; *see also*, *Castañon-Nava v. Dep't of Homeland Sec.,* 161 F. 4th 1048, 1061 (7th Cir. 2025) ("the difference in treatment between a noncitizen at the border and

---

[4] This is also consistent with his I-862 which does not check the box for "arriving alien," but instead for "alien present in the United States who had not been admitted or paroled." [DE 7-1 at 87].

one already in the United States fits within the broader context of our immigration law.") The inclusion of a "default" right after a more limited and narrow statute is "likely no coincidence." *Pizarro Reyes*, 2025 WL 2609425, at *5. It is "consonant with the core logic of our immigration system" that different statutory schemes would apply to non-citizens arriving at the border compared to non-citizens already within the country. *Martinez v. Hyde,* 792 F. Supp. 3d 211, 222 (D. Mass 2025).

The statutory scheme regarding the arrest warrant and the issuance of a notice to appear provides clarity, as well. Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested" pending removal. Section 1226's implementing regulations further expand on this topic. 8 C.F.R. § 236.1 is titled "Apprehension, custody, and detention" and specifically § 236.1 is subtitled "Warrant of Arrest." It states that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). As a result, Section 1226 focuses on individuals *already* in the United States who are found to be removable, and a Form I-200 administrative warrant is issued for their arrest.

This is contrast to Section 1225 and its implementing regulation, 8 C.F.R. § 235. Under Section 1225, noncitizens are not arrested pursuant to a warrant. They are detained upon arrival and are not permitted to enter the United States. This detention is a statutory function of the inspection process and not an arrest pursuant to administrative warrant. This again supports the overall notion that different statutory schemes would apply to different groups of non-citizens. *Martinez,* 792 F. Supp. 3d at 222. Thus, Section 1225 is for arriving individuals "seeking admission" at the border and do not need to be arrested. Section 1226 is for noncitizens already present in the United States. *Castañon-Nava,* 161 F. 4th at 1061 ("[p]ut another way, 'U.S.

immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)'" (alterations in original) (quoting *Jennings*, 583 U.S. at 289)).

Finally, the Laken Riley Act amendments to Section 1226 also support this distinction. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.,* 514 U.S. 386, 397 (1995). The Laken Riley Act added new mandatory detention provisions to an otherwise discretionary statute. Now, in Section 1226(c), the Attorney General must detain a noncitizen if (i) the noncitizen is inadmissible because they are in the United States without being admitted or paroled, obtained documents for admission through misrepresentation or fraud, or lacks valid documentation or, "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Section 1226(c)(1)(E)(i)-(ii). If Section 1225(b)(2)(A) governed certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary. That's "because an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted,' ICE would never need to rely on § 1226(c)(1)(E) to detain them." *Pizzaro Reyes,* 2025 WL 2609425, at *5 (quoting Section 1225(b)(2)(A)). And further, "[courts] do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022). Reading the statutes otherwise would result in "two separate clauses" performing the "same work." "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of

these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes,* 2025 WL 2609425, at *5.[5]

In sum, based upon the titles, statutory context, relationship between Section 1225 and Section 1226, and most importantly the text, the Court finds it difficult to read a noncitizen who is "seeking admission" when the individual never attempted to "seek" admission pursuant to Section 1225(b)(2)(A). This is especially true when the individual has been present in the country for approximately fifteen years. This is true, even if the noncitizen may be an "applicant for admission" pursuant to Section 1225(a)(1). That has no bearing on whether he is seeking admission under Section 1225(b)(2)(A). *See, e.g., Del Villar v. Noem,* 2025 WL 3231630, at *5 (W.D. Ky. Nov. 19, 2025) (stating that although the Petitioner may be "an applicant for admission" he is "not 'seeking admission' because he has been [present] in the United States.") *see also, Alonso v. Tindall,* 2025 WL 3083920, at *5 (W.D. Ky. Nov. 4, 2025) (holding that even though "Alonso is thus an 'applicant for admission' he is not 'seeking admission'" and Section 1225(b)(2)(A) does not apply). Recently, the Seventh Circuit, which was the first court of appeals to reach this issue,[6] stated that the United States was "not likely to succeed on the merits of their argument" that Section 1225 governs the arrest of noncitizens *already present* in the United States. *See generally, Castañon-Nava,* 161 F. 4th at 1061-62. The Seventh Circuit held that, "while a noncitizen arrested

---

[5] The court in *Singh v. Noem,* 2026 WL 74558 (E.D. Ky. Jan. 9, 2026) states that "the Laken Riley Act is about the timing of detention," and thus, finds that the Laken Riley Act does not render Section 1225(b)(2)(A) superfluous. *Id.* at *5. Although the text of 8 U.S.C. 1226(c)(1)(E) states "***when*** the alien is released…," which *Singh* hinges on the use of "when," it glosses over the other, and earlier text in the statute, found in 8 U.S.C. 1226(c)(1) which uses the same language as 1225(b)(2)(A), "the Attorney General ***shall*** take into custody any alien who…." Thus, it is mandating the detention of aliens who otherwise would not be subject to mandatory detention, not solely "mandat[ing] the ***timing*** of detention of certain aliens" as *Singh* alleges. *Singh,* 2026 WL 74558, at *5 (alterations in original). Therefore, the Laken Riley Act would still be a redundant measure of mandatory detention even if read as *Singh* asserts.

[6] The Court recognizes that the Fifth Circuit has also ruled on this issue. *See Buenrostro-Mendez v. Bondi,* -- F.4th --, 2026 WL 323330 (5th Cir. 2026). However, for the reasons stated in this opinion the Court disagrees with the majority panel and the case is not binding in this circuit.

in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A)." *Castañon-Nava*, 161 F. 4th at 1061.

### ii. *Plain Language of Section 1225.*

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States." Under § 1225(b)(2) any applicant for admission who is "not clearly and beyond a doubt entitled to be admitted" must be detained. Respondents take the position that all unadmitted and uninspected aliens are "applicants for admission." [DE 7-4 at 127-28]. Respondents' interpretation of § 1225(b)(2)(A), therefore, would call for mandatory detention of every noncitizen present in the United States who has not been lawfully admitted. This interpretation is "much too broad." *Roman v. Olson,* No. CV 25-169-DLB-CJS, 2025 WL 3268403, at *3 (E.D. Ky. Nov. 24, 2025); *Buenrostro-Mendez*, -- F.4th --, 2026 WL 323330, at *18 ("the government's proposed reading of the statute would mean that, for purposes of immigration detention, the border is now everywhere"); *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction."); *Bautista v. Santacruz*, 2025 WL 3289861, at *10 (C.D. Cal. Nov. 20, 2025) ("Respondents' expansive interpretation of 'applicants for admission' would effectively nullify a portion of the INA through the DHS's legislative or interpretive exercise of power.")

Respondents contend that because Perez is an "applicant for admission" who is seeking relief from his removal, he is "properly detained under 8 U.S.C. § 1225(b)(2)." [DE 7 at 73]. But the United States' interpretation of Section 1225 ignores or simply reads out the word "seeking"

in the phrase "seeking admission." Section 1225(b)(2)(A) states, "[s]ubject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." (emphasis added). The term "seeking admission" is *not* defined in the statute. Seeking means "to go in search of" and is synonymous with "pursue." *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024). Other courts have stated that seeking "implies action." *Lopez-Campos v. Raycraft,* F.Supp. 3d 771, 781 (E.D. Mich. 2025). And it is "Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Castañon-Nava*, 161 F. 4th at 1061 (quoting Section 1225(a)(1)).

Also, courts are instructed to presume that Congress would *not* add redundancy to statutes. *Gustafson v. Alloyd Co.,* 513 U.S. 561, 574 (1995) ("the [Supreme] Court will avoid a reading which renders some words altogether redundant.") And even if they did, Courts must give effect to every word in the statute. *Corley v. United States*, 556 U.S. 303, 314 (2009). That is, courts must construe statutes as written even if "Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016). Reading the statute as the United States contends would either ignore the plain meaning of "seeking" (which implies a present tense action, *Seeking*, WEBSTER'S DICTIONARY (11th ed. 2024)) or, more simply, readout "seeking" directly from the statute. But this Court will not ignore words within a statute. This would be expressly against the "cardinal principal" of reading and interpreting every word in a statute. *Corley*, 556 U.S. at 314; *Castañon-Nava*, 161 F. 4th at 1061 (holding that "Defendants' construction would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous" violating one of the cardinal rules of statutory construction"); *Buenrostro-Mendez,* -- F.4th – 2026 WL 32330, at *14 (Douglas,

J., dissenting) ("'seeking admission' is therefore not a throwaway extra phrase, but rather the modern statute's equivalent of the key term limiting its reach to noncitizens 'arriving' at the border"); *Villa v. Normand,* 2025 WL 3188406, at *7 (S.D. Ga. Nov. 14, 2025) (stating that *Rojas v. Olson,* 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025) erred in its decision because, for one reason, they "gave little attention to the meaning of the term 'seeking'"). And because "seeking admission" is not defined in the statute compared to other terms, such as "admission," or "applicant for admission" it is this Court's duty to interpret every word in the statute. *Corley*, 556 U.S. at 314; *Castañon-Nava,* 161 F. 4th at 1061 (stating that Congress "could easily have included noncitizens who are 'seeking admission' within the definition [of Applicant for Admission] but elected not to do so"); *Buenrostro-Mendez,* -- F.4th – 2026 WL 32330, at *14 (Douglas, J., dissenting) ("Congress specifically limited the subsection's mandatory detention authority to noncitizens 'seeking admission'"); *Biden v. Texas*, 597 U.S. 785, 798 (2022) ("[i]f Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote.")

This reading is further supported by the implementing regulations for Section 1225 set forth in 8 C.F.R. § 235, titled "Inspection of Persons Applying for Admission." Again, the plain language of the title alone implies action by the alien, that the alien is actively "applying for admission." Further, 8 C.F.R. § 235.1, subtitled "Scope of examination" specifically states that

> (a) *General.* Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section.
> (b) *U.S. Citizens.* A person claiming U.S. citizenship must establish that fact to the examining officer's satisfaction and must present a U.S. passport or alternative documentation as required by 22 CFR part 53. If such applicant for admission fails to satisfy the examining immigration officer that he or she is a U.S. citizen, he or she shall thereafter be inspected as an alien. . .
> …
> (f) *Alien applicants for admission.*
> (1) Each alien seeking admission at a United States port-of-entry must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal under the immigration laws, Executive Orders, or Presidential Proclamations, and is entitled, under all of

the applicable provisions of the immigration laws and this chapter, to enter the United States.

The regulations make clear that if any of the categories of individuals examined on arrival provide the appropriate documentations then they are either admitted and issued a "Form I-94 as evidence of the terms of admission," or "[a]ny alien paroled into the United States under section 212(d)(5) of the Act, including any alien crewmember, shall be issued a completely executed Form I-94, endorsed with the parole stamp." 8 C.F.R. § 235.1(h)(1)-(2).

If, however, the individual does not present the appropriate documents for examination, and therefore is not admitted or paroled, then they are subject to expedited removal.

> (2) An alien present in the United States who has not been admitted or paroled or an alien who seeks entry at other than an open, designated port-of-entry, except as otherwise permitted in this section, is subject to the provisions of section 212(a) of the Act and to removal under section 235(b) or 240 of the Act.

8 C.F.R. § 235.1(f)(2). Expedited Removal is set forth in 8 C.F.R. § 235.3, titled "Inadmissible aliens and expedited removal." This subsection specifically states that detention is appropriate prior to inspection on any vessel or aircraft that arrives in the United States and that expedited removal applies to any arriving alien and

> [a]s specifically designated by the Commissioner, aliens who arrive in, attempt to enter, or have entered the United States without having been admitted or paroled *following inspection by an immigration officer at a designated port-of-entry*, and who have not established to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility.

8 C.F.R. § 235.3(a)-(b)(emphasis added). As such, the regulation makes clear that detention and expedited removal under Section 1225 is for arriving aliens or those who have not been "physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility." 8 C.F.R. § 235.3(b)(1)(ii). Perez does not fit within either category as there does not seem to be any question that he has been present in the United States for approximately fifteen years.

17

### iii.   Plain Language of Section 1226

Section § 1226 as titled controls the "apprehension and detention of aliens." Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" is "pending a decision on whether the alien is to be removed from the United States." The plain meaning of the statute is clearly applicable to Perez—an "alien," who was arrested and detained by ICE, and is currently pending removal proceedings. The Notice to Appear, issued by DHS, checked the box titled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "*arriving* alien." [DE 7-1 at 88 (emphasis added)]. "This supports this Court's conclusion, and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez*, that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens. The Respondent's new post hoc position is simply 'impermissible.'" *Roman,* 2025 WL 3268403, at *4 (citation omitted) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations.")).

### iv.   Related Case Law

The United States incorporated brief cites to several nonbinding district courts, and one BIA decision, to support their interpretation.[7] However, the Court is not persuaded by these decisions for the reasons previously explained in *Edahi*, 2025 WL 3466682, at *9–13, incorporated here by reference.

* * *

---

[7] None of cases cited by the United States are controlling authority within the Sixth Circuit. Further, the BIA is neither binding, nor should be viewed as persuasive authority, on any district court. See *Loper Bright Enter.*, 603 U.S. at 413 ("courts. . . may not defer to an agency interpretation of the law simply because a statute is ambiguous") (emphasis added).

For the reasons above, Perez, who has been present in the United States for approximately fifteen years, is not "seeking admission" into the United States, a fact acknowledged in his Notice for Appearance by the checking of the box for "present" and not for "arriving," as well as his arrest pursuant to the I-200 Warrant which authority arises out of Section 1226. Section 1226, not Section 1225, applies to his detention.

### C.  Lawfulness of Current Detention

As stated, Perez is detained under Section 1226. The United States contends that because Perez is properly detained under Section 1225, not Section 1226, he has been "provided all the due process to which [Perez] is entitled." [DE 7 at 85]. Otherwise, the United States does not respond to Perez's alleged violation of due process. Because the Court found that Perez's detention is guided by Section 1226, the Court must determine whether the continued detention pursuant to Section 1226 is in violation of his Due Process.

The Due Process Clause extends to all persons regardless of status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). This includes non-citizens. *Id.* To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335. The United States does not address the merits of his Due Process claim, but instead focuses solely on the legal argument of Section 1225 versus Section 1226 as referenced above.

1. Private Interest

It is undisputed Perez has a significant private interest in not being detained. One of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts can also consider the detainee's condition of confinement. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025). This is to determine if the conditions are indistinguishable from criminal incarceration. *Id.* Perez is being detained at Daviess County Jail. [DE 1 at 2].

Perez most recently lived in Indiana prior to his detainment. [*Id.*]. He lived with his partner. [*Id.*]. He has a six year old U.S. citizen daughter. [*Id.*]. But because of his detention in a separate state, he is away and separated from his family, community, and place of work. [*Id.* at 2; 14]. The detention is thus making it difficult for Perez to participate in his community, connect with others, and work. [*Id.*]. As a result, the first *Matthews* factor favors Perez's position.

2. Risk of Error

The second factor concerns the risk of the erroneous deprivation of Perez liberty. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that "re-detention without any individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). As of today and upon his redetention, Perez has not had a merits bond hearing, with counsel and evidence. *Munoz Materano*, 2025 WL 2630826, at *15 (holding that Due process requires at a minimum the opportunity for the petitioner to submit evidence and be heard). Respondents have not demonstrated that Perez is a flight risk or a danger to the community, nor is it likely that Respondents can. It would appear to the Court the most

material change within the past year, with respect to Perez, is the United States' interpretation of Section 1225 and Section 1226. Thus, because of a high, if not already evident, risk of erroneous deprivation of Perez's liberty interest, the second *Matthews* factor favors Perez.

### 3. United States' Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings. *Sampiao*, 2025 WL 2607924, at *12. However, a "routine bond hearing" before an IJ presently "minimal" burdens to the United States." *Hyppolite v. Noem,* 2025 WL 2829511, at *15 (E.D. N.Y. Oct. 6, 2025). These procedures are also already in place. *Id.* Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Because of that, the Court finds that the third *Matthews* factor also favors Perez.

Therefore, the Court finds that all three *Matthews* factors favor Perez. The current detention of Perez is in violation of the Due Process Clause and the INA.

### III.    Remedy

Numerous courts across the country have ordered the release of individuals stemming from ICE's illegal detention. *Patel*, 2025 WL 2823607, at *6; *Beltran Barrera*, 2025 WL 2690565, at *7; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). The Supreme Court has also recognized that "Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107 (emphasis in original). This Court is releasing Perez because of the "unlawful detention" by ICE and the United States for the reasons stated above. Perez is not

being released because he is detained pursuant to Section 1226. But instead, the Court is ordering his release because of the United States' illegal actions *it undertook* in Perez's detention. *Hyppolite,* 2025 WL 2829511 *16 (holding that the United States cannot "detain [Petitioner] without first conducting a hearing before an IJ" because of the unlawful detention of Petitioner).

As a result of his release stemming from the "unlawful detention" in violation of his due process rights, and *further* pursuant to Section 1226 and its supporting regulations, Petitioner must be provided with a bond hearing on the merits before a neutral IJ prior to any re-detention. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ may consider the non-exhaustive list of factors set out in *Matter of Guerra* 24 I. & N. 37, 40 (BIA 2006). Courts across the country have routinely held this procedure proper. *Alonso,* 2025 WL 3083920, at *9; *Lopez-Campos,* F.Supp. 3d at 785-86; *Mboup v. Field Office Director of N.J.*, 2025 WL 3062791, at *2 (D.N.J. Nov. 3, 2025); *Espinoza*, 2025 WL 2675785, at *11; *Ramirez Clavijo*, 2025 WL 2419263, at *6; *Munoz Materano*, 2025 WL 2630826, at *20.

Perez's procedural due process rights are not violated by the very fact he is detained. "Rather, [Petitioner's rights] are violated because he has been detained without a hearing that accords with due process." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, *12 (W.D. Tex. Sep. 22, 2025) (citing to *Black v. Decker*, 103 F.4th 133, 149-150 (2d Cir. 2024)). Therefore, "the proper remedy" is the "full process due under [Section 1226] which includes a bond hearing before an [IJ]." *Maldonado,* 2025 WL 2968042, at *9-10; *Morales-Martinez v. Raycraft*, 2025 WL 3124695, at *7 (E.D. Mich. Nov. 7, 2025) (holding that because Petitioner had been detained "without a . . . hearing, he is in federal custody in violation of federal law.")

Because Perez is being detained pursuant to Section 1226, relevant regulations entitle him to a neutral bond hearing. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Therefore, to afford Perez with the

"full [due] process" under Section 1226, the United States must provide Perez with a neutral bond hearing before an IJ. *Maldanado,* 2025 WL 2968042, at *9-10.

### VI.    Conclusion

For the reasons stated above, the United States has violated Perez's due process rights. The Court **GRANTS** Perez's Petition for Writ of Habeas Corpus [DE 1] and orders the following:

I.    The United States is directed to release Petitioner Perez immediately because of the unlawful detention in violation of his due process rights.

II.    The United States must provide him with a bond hearing before a neutral IJ pursuant to Section 1226.

III.    The United States must certify compliance with the Court's order by a filing on the docket **by February 27, 2026.**

Rebecca Grady Jennings, District Judge

United States District Court

February 26, 2026

23